**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD ALLEN HAMMONDS II, | ) | |
| | ) | Civil Action No. 2: 18-cv-1389 |
| Plaintiff, | ) | |
| | ) | Chief United States Magistrate Judge |
| v. | ) | Cynthia Reed Eddy |
| | ) | |
| ALLEGHENY COUNTY BUREAU OF | ) | |
| CORRECTIONS, et al., | ) | |
| | ) | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER[1]**

Plaintiff, Richard Allen Hammonds II ("Plaintiff"), is currently incarcerated at the

Allegheny County Jail ("ACJ"), and was incarcerated at ACJ at all times relevant to this lawsuit.

He has initiated this action under 42 U.S.C. §§ 1983, 1985, and 1986, seeking damages against

the Allegheny County Bureau of Corrections, County Executive Rich Fitzgerald, and the

following ACJ officials and officers: Warden Orlando L. Harper, Deputy Warden Zeppo,

Deputy Warden Wainwright, Maintenance Supervisor Joe Glaph, Maintenance Supervisor

Amelia Bennett,[2] Sergeant Slaby, Corrections Officer Chisholm, Corrections Officer Younkins,

---

[1]    In accordance with the provisions of 28 U.S.C. § 636(c)(1), all parties who have been identified have been served and have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and entry of judgment. *See* ECF Nos. 25 and 36. There remain three "John/Jane Doe Defendants": Jane Doe, Maintenance Supervisor; John Doe/Jane Doe Mailroom; and John Doe, Registered Nurse "Nurse Jim." While unserved and identified defendants generally must consent for a magistrate judge to exercise jurisdiction based on "consent of the parties" under that statute, the Court is not aware of any decision holding that consent is necessary from defendants who are both unserved and unidentified. The Court therefore concludes that consent of the unserved Doe Defendants in this case is not necessary to proceed under § 636(c).

[2]    Plaintiff was advised on April 8, 2019, that the Court was advised that there is no current or former Allegheny County maintenance employee named Amelia Bennett. Accordingly, for the time being, the defendant identified as "Maintenance Supervisor Amelia Bennett" is treated as a Doe defendant. *See* ECF No. 45.

Jr., Registered Nurse "Nurse Jim", and John/Joan Doe, mailroom supervisor. The majority of the defendants are sued in their individual and official capacities, with the exception of the following: Rich Fitzgerald, who is sued only in his official capacity, and Sergeant Slaby, who is sued only in his individual capacity. Complaint, ¶¶ 6 and 10, respectively.

Plaintiff asserts a potpourri of claims, complaints, and allegations stemming from a variety of alleged constitutional deprivations. For example, he asserts (i) mail tampering and conspiracy to tamper with his mail; (ii) failure to properly maintain ACJ elevators; (iii) retaliation and conspiracy to retaliate; (iv) failing to protect him from an inmate assault; and (v) failing to provide "proper" medical treatment.[3]

Defendants filed the pending motion to dismiss (ECF No. 23), to which Plaintiff has responded in opposition. (ECF No. 38). For the reasons that follow, the motion will be granted in part and denied in part.

## I. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.

---

[3]       Paragraphs 33 - 36 of the Complaint pertain to Plaintiff filing a grievance complaining that Defendants were violating the Clean Air Act and that he had been exposed to "second-hand smoke of synthetic marijuana, PCP, and crystal meth . . ." Plaintiff also contends that he has been retaliated against for, among other things, complaining about his exposure to second-hand smoke. Complaint, at ¶ 37. However, in Paragraph V, Legal Claims, of the Complaint, Plaintiff does not appear to be bringing a separate claim relating to his alleged exposure to second-hand smoke.

2004) ). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555 (citing P*apasan v. Allain*, 478 U.S. 265, 286 (1986)). *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Court of Appeals for the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burch v. Milberg Factors, Inc.,* 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. Discussion

A.    *Alleged Deprivations of Plaintiff's Fifth and Fourteenth Amendment Rights*

Several of Plaintiff's claims indicate that he believes he was subjected to cruel and unusual punishment. The record does not indicate whether at the time of the events giving rise to this lawsuit Plaintiff was a pretrial detainee or a post-conviction person.  However, based on public records, specifically, Plaintiff's criminal docket at Case No. CP-02-CR-10480-2017, it appears that Plaintiff was, and continues to be, a pre-trial detainee.  The docket reflects that he has been detained in ACJ since 08/08/2017 and is scheduled for a jury trial to commence on 10/21/2019, before Judge David R. Cashman.  *See* https://ujsportal.pacourts.us/DocketSheets/CP.aspx.  Due to his pre-trial detainee status, Plaintiff's constitutional claims will be analyzed under the Due Process Clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment.  *Fuentes v. Wagner*, 20 F.3d 335, 344 (3d Cir. 2000).  With that said,  however, when analyzing conditions of confinement claims for pre-trial detainees, courts utilize the jurisprudence developed under the Eighth Amendment. *Hubbard v. Taylor*, 339 F.3d 150, 165-66 (3d Cir. 2005).

The cruel and unusual punishment clause of the Eighth Amendment proscribes punishments that " 'involve the unnecessary and wanton infliction of pain, or are grossly disproportionate to the severity of the crime.' " *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 417 (3d Cir. 2000) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). In *Rhodes*, the Supreme Court stated that prison conditions amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs . . . [that] deprive

inmates of the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. "To demonstrate a deprivation of [ ] basic human needs, a plaintiff must show a sufficiently serious objective deprivation, and that a prison official subjectively acted with a sufficiently culpable state of mind, i.e., deliberate indifference." *Tillman*, 221 F.3d at 418. As the requirements of the Eighth Amendment set a "floor" for analysis of Fourteenth Amendment due process claims, it is worth noting that a pretrial detainee's "desire to be free from discomfort" is insufficient to establish a fundamental liberty interest protected by the constitution. *See Bell*, 441 U.S. at 534-35. Keeping these standards in mind, the Court will evaluate each alleged instance of cruel and unusual punishment to determine whether Plaintiff's allegations are sufficient to survive Defendants' *Twombly/Iqbal* challenge.[4]

1.    Failure to Properly Maintain ACJ Elevators

Plaintiff alleges that the ACJ elevators routinely malfunction and Defendants Fitzgerald, Harper, Zeppo, Wainwright, Bennet, and Glaph violated Plaintiff's Eighth Amendment right to be free of cruel and unusual punishment when they refuse to "rectify the safety hazard." Complaint, at ¶ 42. Specifically, Plaintiff contends that Defendants have failed to properly maintain one or more of the ACJ elevators, resulting in several breakdowns or other

_____

[4]      Paragraph 44 of the Complaint states that "[t]he actions of Defendants et.al constituted deliberate indifference to a prisoner's health and safety when they failed to protect him from the assaults by prisoners and denied him proper medical care for treatment for non-medical reasons." Plaintiff's generic reference to all "Defendants et.al" is insufficient and does not give fair notice to any defendant of the specific grounds for the claims against him or her. *See Grieveson v. Anderson,* 538 F.3d 763, 778 (7th Cir. 2008) (rejecting "[v]ague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional conduct"). However, because Plaintiff's allegations in the body of the Complaint specifically detail the alleged conduct of Defendant Younkins, Jr., Chisholm, Nurse Jim, and Slaby, the Court will analyze Plaintiff's failure to protect and failure to provide medical claims as to these four defendants.

malfunctions, "creating an unreasonable risk of injury in living and can be the death of an inmate or staff member." Resp. at 6.

However, the Complaint is void of sufficient facts showing that Defendants were "deliberately indifferent" to the alleged danger posed by the elevator malfunctions or whether the majority of the Defendants were even aware of the elevator malfunctions. Allegations that the malfunctioning of the elevators "can be the death of an inmate or staff" are far too speculative and vague to survive a motion to dismiss. At best, Plaintiff alleges that he filed a grievance complaining about the elevators malfunctioning and that Defendant Glaph and Defendant Bennett informed him that ACJ did not have the budget for an entirely new elevator at that time. Complaint at ¶ 32. Without more, this allegation simply does not rise to the level of deliberate indifference.

Thus, the motion to dismiss will be granted on this claim and Plaintiff's allegations regarding the malfunctioning of the ACJ elevators will be dismissed.

2.     Failure to Protect[5]

According to the allegations of the Complaint, on 2/11/2018, as Defendant Younkins, Jr., was leaving the POD, he announced, "Anybody who fucks up Hammonds will be giving a package, he is a rat. . . . He is telling how the drugs get into the jail!" Complaint, at ¶ 21. Upon hearing this, Plaintiff asked Defendant Chisholm if he could immediately be placed in protective custody. Chisholm denied his request stating, "Snitches get stitches and thrown in ditches." *Id.* at ¶ 22. Chisholm then commenced doing a security round and yelled, "now is the time to do it." *Id.* at ¶ 23.

---

[5]     Defendants seek to dismiss this claim against all defendants, <u>except</u> Defendants Younkin, Jr., and Chisholm.

Plaintiff alleges that he was then immediately tackled from behind and dragged into a cell and "unmercifully beaten and stabbed by six other inmates. Plaintiff was hit with batteries in a sock, stabbed in his face, ribs, back and head areas." *Id*. at ¶ 24.

In the most general sense, a prison official violates the Eighth Amendment when the following two elements are established: (1) the inmate alleges an objectively serious deprivation by a prison official of food, clothing, shelter, medical care, or safety; and (2) the prison official acted with a sufficiently culpable state of mind to deprive the inmate of his right to food, clothing, shelter, medical care, or safety. Of particular relevance to this case, the United States Supreme Court has addressed these two general elements as they apply to the failure to protect from assault by other inmates. *Framer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment also imposes a duty on prison officials to " ' take reasonable measures to guarantee the safety of the inmates.'" *Id*. (quoting *Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984)). Despite this general requirement to protect inmates, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety" *Id*. at 834.

To state a cognizable failure to protect claim under § 1983, the inmate must demonstrate that two conditions are met. First, for a claim "based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of harm." *Id*. (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). Second, the inmate must show that prison officials acted with deliberate indifference to the safety of the inmate. The test for deliberate indifference is twofold: To act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference." *Farmer,* 511 U.S. at 837. With these standards in mind, the Court will now examine plaintiff's failure to protect claims.

a.    <u>Substantial Risk of Serious Harm</u>

The Court finds that Plaintiff has satisfied the first prong of the inquiry. In the Complaint, he alleges that Defendants Younkins, Jr., and Chisholm incited the assault against him. Plaintiff also alleges that after hearing Younkins, Jr., call him a "rat," his request to be placed in protective custody was denied by Chisholm. The allegations of the Complaint sufficiently plead Plaintiff was at substantial risk of serious harm.

b.    <u>Deliberate Indifference</u>

Defendants argue that, with the exception of Defendants Younkins, Jr. and Chisholm, Plaintiff does not satisfy the deliberate indifference prong because he has failed to show particularized knowledge by the Defendants that there was a risk to Plaintiff. The Court agrees with this argument. Plaintiff has failed to plead any facts that would suggest that the remaining defendants were aware of the actions of Defendants Younkins, Jr., and Chisholm leading up to the assault on 2/11/2018.

Only Plaintiff's allegations against Defendants Younkins, Jr., and Chisholm for failure to protect will be allowed to continue beyond the Defendants' motion to dismiss. Discovery may well reveal that the alleged conduct of each of these two defendants does not give rise to a deliberate indifference claim, but at this early stage of litigation, the allegations of the Complaint must be accepted as true and all reasonable inferences must be drawn in Plaintiff's favor.

3.    <u>Failure to Provide Adequate Medical Treatment</u>

Plaintiff alleges that five days after his assault, on 2/16/2018, he was taken to the ACJ medical unit and "perfunctorily looked at" by Nurse Jim. He alleges that he told Nurse Jim of

the multiple injuries he sustained in the assault on 2/11/2018, but because Defendant Slaby informed Nurse Jim that "plaintiff was an aggressive grievance filer and to let him 'plaintiff' languish in physical pain," Nurse Jim refused to provide Plaintiff proper medical care treatment for non-medical reasons. Complaint at ¶¶ 28, 29.

The United States Court of Appeals for the Third Circuit has indicated that a pretrial detainee's right to adequate medical care should be analyzed under the well-settled standard established in *Estelle v. Gamble*, 429 U.S. 97 (1976), which provides that prison officials are required "to provide basic medical care to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 103. "[W]hether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed . . . deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id*. at 104-05 (citations omitted).

A medical need is "serious" if "it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation omitted). "The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment." *Id*.

The "deliberate indifference" a plaintiff must allege lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other" and is frequently equated with

recklessness as that term is defined in criminal law. *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994). This standard "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients." *Inmates of Allegheny Cnty. Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979). Where a prisoner has received medical care and only the adequacy of the treatment is disputed, courts are often reluctant to second guess professional medical judgment. *See id.*

However, deliberate indifference can be manifested by an intentional refusal to provide care, delayed medical treatment, and the denial of prescribed medical treatment. *See Durmer,* 991 F.2d 64 (3d Cir. 1993); *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009) ("Deliberate indifference may be shown by intentionally denying or delaying medical care.").

Defendants contend that this claim should be dismissed because Plaintiff has not adequately alleged that the "majority of Defendants knew, or were made aware of, Plaintiff's injuries" after the 2/11/2018 assault. The Court agrees, <u>except</u> as to Defendants Younkins, Jr., Chisholm, Slaby, and Nurse Jim.

Accepting the facts alleged in the complaint as true and construing them in the light most favorable to Plaintiff, the Court finds that Plaintiff has alleged enough to create plausible due process claims against Defendants Younkins, Jr., Chisholm, Slaby, and Nurse Jim for denial of medical treatment as described in the complaint.

B.    *Alleged Deprivation of Plaintiff's First Amendment / Due Process Rights*

1.    <u>Mail Tampering and Conspiracy to Tamper Mail</u>

Plaintiff alleges that Defendants Fitzgerald, Harper, Zeppo, Wainwright, and John Doe/Jane Doe Mailroom Supervisor illegally opened and photocopied his incoming/outgoing legal and personal mail and gave copies to the District Attorney's office and Pittsburgh Police's

crime lab, all of which constitutes "a due process violation, interference with access to the courts claim under the First, Fourth, Sixth and Fourteenth Amendment to the United States Constitution and constitutional conspiracy under 42 U.S.C. Section 1985 and 1986." Complaint, at ¶ 41. Plaintiff further alleges that Defendants have been put on notice of this practice "via request slips, grievances and orally that their actions were illegal and in violations of the law." Complaint, at ¶ 18.

        a.     *Mail Tampering With Legal Mail*

Defendants do not make any distinction between legal and non-legal mail. Rather, they argue that a correctional institution with a legitimate penological interest in maintaining institutional security has a clear right to open and inspect all incoming and outgoing mail. This position is generally correct as the Constitution permits prisons to restrict prisoners' right to send and receive mail for legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 79 (1987). However, "prisoners by virtue of their incarceration, 'do not forfeit their First Amendment right to use of the mails,' and . . . a 'state pattern and practice of opening legal mail outside the presence of the addressee inmate interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom on speech." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) (quoting *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995)). Generally, isolated incidents of interference with legal mail are not actionable under the First Amendment absent evidence of an improper motive or evidence of injury. *See, e.g., Nixon v. Sec'y Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012). However, prisoners need not establish an actual injury when there is a pattern and practice of opening properly marked incoming legal outside an inmate's presence. *Jones*, 461 F.3d at 359. *See also Schreane v. Holt*, 482 F. App'x 674, 676 (3d Cir. 2012) (per curiam).

"[R]eading legal mail would appear to infringe the right of access even more than simply opening and inspecting it." *Bieregu*, 59 F.3d at 1456.

Here, the Court finds that the Complaint contains sufficient allegations to survive a *Twombly/Iqbal* challenge based on Plaintiff's allegations that his legal mail has been opened and read by ACJ staff outside his presence based on a pattern and practice.[6] However, the same cannot be said of Plaintiff's allegations pertaining to his non-legal mail.

> b. *Mail Tampering with Non-Legal Mail*

Plaintiff alleges that illegal drugs such as synthetic marijuana, PCP, and crystal meth have been successfully smuggled into ACJ, and that Defendants claim opening the mail is "being taken to curb the epidemic of an unknown substance being introduced into the jail via mail." Complaint, at ¶ 17. Defendants argue that Plaintiff's allegation "only underscores the necessity of ACJ's current policies and practices for preventing the smuggling of contraband." Br. at 8.

"The Supreme Court has recognized that prisoners have protected First Amendment interests in both sending and receiving mail." *Caldwell v. Beard*, 305 F. App'x 1, 4 (3d Cir. 2008) (citing *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley,* 482 U.S. 78 (1978)). The Supreme Court further recognized that the rights of prisoners "must be exercised with due regard for the inordinately difficult undertaking that is modern prison administration." *Id.* (internal quotation marks omitted). The opening and inspecting of outgoing personal mail is reasonably related to the legitimate penological interest of institutional security. *Id.*

---

[6]     The Court recognizes that discovery may well reveal that the alleged conduct does not give rise to a constitutional violation, but at this stage of the litigation, the allegations of the Complaint must be accepted as true and all reasonable inferences must be drawn in Plaintiff's favor.

The Court finds that the opening and inspecting of incoming and outgoing non-legal mail, especially mail that might contain contraband, is reasonably related to the legitimate penological interest of ACJ security.  Thus, the motion to dismiss Plaintiff's claims for tampering with his non-legal mail will be granted and this claim will be dismissed.

c.  *Conspiracy to Tamper With Mail*

In addition to alleging that Defendants actually have tampered with his mail, Plaintiff also alleges that certain Defendants conspired to tamper with ACJ inmate mail through "emails, telephone calls, and meetings," in violation of 42 U.S.C. §§ 1985[7] and 1986.  A conspiracy claim brought under 42 U.S.C. § 1985(2) or (3) is legally insufficient pursuant to Federal Rule of Civil Procedure 12(b)(6) when the complaint does not allege that the conspiracy was motivated by racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws.  *Farber v. City of Paterson,* 440 F.3d 131, 134 (3d Cir. 2006).

Plaintiff does not aver that Defendants' alleged conspiracy to tamper with inmate mail was motivated by racial or class based discriminatory animus.   Thus, Plaintiff's Complaint fails to state a conspiracy claim under 42 U.S.C. §§ 1985(2) or (3).

Further, because 42 U.S.C. § 1986 only imposes liability on individuals who fail to act to prevent harmful acts from occurring pursuant to a 42 U.S.C. § 1985 conspiracy, and because in

---

[7]    Although Plaintiff does not specify which subsection of 42 U.S.C. § 1985 he believes Defendants have violated, Section 1985(1) clearly does not pertain to the present case as it prohibits conspiracies to interfere with a federal officer's performance of his or her duties.  The Court assumes, therefore, that the most likely basis for Plaintiff's conspiracy claim is Section 1985(2) which prohibits conspiracies to obstruct justice and to intimidate litigants and witnesses and/or Section 1985(3) which prohibits conspiracies to deprive persons of certain constitutional rights.

this case Plaintiff has failed to state a claim under 42 U.S.C. § 1985, Plaintiff's claims under 42 U.S.C. § 1986 will likewise be dismissed.

    2.    Access to the Courts

Plaintiff also asserts that Defendants' handling and processing of his mail has denied him access to court. Specifically, Plaintiff avers that,

> One time the Superior Courts sent the plaintiff a notice to respond to his appeal and given a deadline to meet. However, due to defendant mailroom supervisor John Doe/Jane Doe's rejection and return to sender approach caused plaintiff to miss his deadline.

Resp. at 8. (ECF No. 38).[8] Defendants argue that Plaintiff has failed to state a First Amendment access to courts claim because he does not allege an actual injury with sufficient specificity. The Court agrees with this argument.

Access to courts claims fall into two general categories. "In the first are claims that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Christopher v. Harbury*, 536 U.S. 403, 413 (2002). "The second category covers claims not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all evidence), no matter what official action may be in the future. The official acts claimed to have denied access may allegedly have caused the loss or inadequate settlement of a meritorious case." *Id.* at 413-14. "The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, providing relief obtainable in no other suit in the future." *Id.* at 414. It appears Plaintiff is alleging the first kind of claim as Plaintiff states that he missed a deadline in his appellate case.

---

[8]    As Plaintiff is appearing *pro se*, the Court will treat the factual allegations contained in his response as though they were included in his complaint. *See Lewis v. Att'y Gen. of U.S.*, 878 F.2d 714, 722 (3d Cir. 1989).

The Court finds that Plaintiff's complaint lacks sufficient factual basis to state a claim. Simply alleging that he missed a deadline is not sufficient to show that his constitutional right of access to the courts has been violated. *Caldwell v. Beard*, 306 F. App'x 1, 3 (3d Cir. 2008); *see also Monroe v. Beard*, 536 F.3d 198, 205-06 (3d Cir. 2008) (noting that the complainant "must describe the underlying arguable claim well enough to show that it is 'more than mere hope'"). Even accepting all the facts in the complaint as true, the face of the complaint does not state a valid access to the courts claim.

### 3.    Retaliation and Conspiracy to Retaliate

It is well settled that "government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Allah v. Seiverling*, 229 F.3d 220, 224–25 (3d Cir. 2000)). In order to state a *prima facie* case of retaliation, a prisoner / plaintiff must demonstrate (1) that the conduct in which he engaged was constitutionally protected, (2) he suffered an "adverse action" at the hands of prison officials; and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him. *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell*, 318 F.3d at 530); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Although there is not a heightened pleading standard in civil rights cases and liberal standards are to be applied to *pro se* pleadings, a § 1983 complaint must still comply with the Federal Rules of Civil Procedure, and must contain at least a modicum of factual specificity, identifying the particular conduct of each defendant that is alleged to have harmed the plaintiff, so that a defendant has adequate notice to frame an answer.

Plaintiff alleges that Defendants Fitzgerald, Harper, Zeppo, Wainwright, Glaph, Slaby, Younkins, Jr., Chisholm, Bennett, and Nurse Jim retaliated against him and conspired to retaliate against him because of the many grievances he has filed. Complaint, at ¶ 43.

Defendants' argument for dismissal of this claim is two fold: (i) that Plaintiff has failed to plead that Defendants Fitzgerald, Harper, Zeppo, Wainwright, Glaph, and Bennett were materially involved in, or even aware of, any alleged retaliatory actions; and (ii) that Plaintiff has failed to plead sufficient facts to set forth a plausible claim against Defendants Slaby, Younkins, Jr., Chisholm, and Nurse Jim.

The Court agrees with Defendants that Plaintiff has failed to allege any facts implicating the involvement of Defendants Fitzgerald, Harper, Zeppo, Wainwright, Glaph, and Bennett in any retaliatory actions. Bald allegations that prison officials retaliated against an inmate for constitutionally protected speech, without more, will not satisfy the three-prong *Rauser* test. *Owens v. Coleman*, 629 F. App'x 163, 167 (3d Cir. 2015) (holding that an inmate plaintiff's "mere assertion" that prison officials retaliated against him for filing grievances by intentionally placing him in an unsafe cell, and denying him any and all relief for his subsequent grievances, failed to set forth a prima facie retaliation claim).

However, the Court finds that Plaintiff's Complaint minimally sets forth sufficient facts to state plausible First Amendment retaliation claims against Defendants Slaby, Younkins, Jr., Chisholm, and Nurse Jim. While the Court views these retaliation claims with skepticism, at this early stage of the litigation, accepting the facts alleged in the complaint as true and construing them in the light most favorable to Plaintiff, the Court finds that Plaintiff has alleged enough to create plausible retaliation claims that will be allowed to continue beyond the Defendants' motion to dismiss. Although Plaintiff's retaliation claims may ultimately not succeed on the

merits, they are not "indisputably meritless," "fantastic or delusional," "of little or no weight," or "trivial." *Neitzke v. Williams*, 490 U.S. 325, 327 (1989).

Plaintiff also alleges that Defendants have engaged in a conspiracy to retaliate against him. "A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act[.]" *Holt Cargo Sys., Inc. v. Del. River Port Auth.*, 20 F. Supp. 2d 803, 843 (E.D.Pa. 1998) (quoting *Hale v. Townley,* 45 F.3d 914, 920 (5th Cir. 1995)). In other words, in a § 1983 case "the function of conspiracy doctrine is merely to yoke particular individuals to the specific torts charged in the complaint." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). " '[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred' or 'plausible grounds to infer an agreement.'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556)). It is not enough to allege "parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557. Moreover, "[o]nly allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient." *Rose v. Bartle*, 871 F. 2d 331, 366 (3d Cir. 1989).

Even accepting as true the § 1983 conspiracy allegations in the Complaint, the allegations do not allow the Court to infer that Defendants entered into an agreement to violate Plaintiff's constitutional rights. Thus, Plaintiff's claims of a § 1983 conspiracy will be dismissed.[9]

---

[9]     In any event, the conspiracy claim is superfluous. Plaintiff has pled an underlying violation of his First Amendment rights and alleges that each of the conspirators was directly involved in it, so "[t]he conspiracy count . . . adds nothing to the substantive count." *Hostrup v. Bd. of Jr. Coll. Dist. No. 515, Cook & Will Counties & State of Ill*., 523 F.2d 569, 576 (7th Cir. 1975). Defendants cannot be held liable under § 1983 for conspiring to violate Plaintiff's First

C.    Monell Claim[10]

In *Connick v. Thompson*, the Supreme Court of the United States reiterated the

requirements for municipal liability:

> A municipality or other local government may be liable under [section 1983] if
> the governmental body itself "subjects" a person to a deprivation of rights or
> "causes" a person "to be subjected" to such deprivation. *See Monell v. New York
> City Dept. of Social Servs.*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611
> (1978). But, under § 1983, local governments are responsible only for "their own
> illegal acts." *Pembaur v. Cincinnati,* 475 U.S. 469, 479, 106 S.Ct. 1292, 89
> L.Ed.2d 452 (1986) (citing *Monell*, 436 U.S., at 665–683, 98 S.Ct.2018). They are
> not vicariously liable under § 1983 for their employees' actions. *See id.*, at 691, 98
> S.Ct. 2018; *Canton*, 489 U.S., at 392, 109 S.Ct. 1197; *Board of Comm'rs of Bryan
> Cty. v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)
> (collecting cases).
>
> Plaintiffs who seek to impose liability on local governments under § 1983 must
> prove that "action pursuant to official municipal policy" caused their injury.
> *Monell,* 436 U.S., at 691, 98 S.Ct. 2018; *see id.,* at 694, 98 S.Ct. 2018. Official
> municipal policy includes the decisions of a government's lawmakers, the acts of
> its policymaking officials, and practices so persistent and widespread as to
> practically have the force of law. *See ibid.; Pembaur*, supra, at 480–481, 106 S.Ct.
> 1292; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168, 90 S.Ct. 1598, 26
> L.Ed.2d 142 (1970). These are "action[s] for which the municipality is actually
> responsible." *Pembaur*, *supra,* at 479–480, 106 S.Ct. 1292.

*Connick v. Thompson*, 563 U.S. 51, 60-61 (2011).

Thus, to establish municipal liability pursuant to § 1983, the plaintiff must identify the

policy, custom, or practice of the municipal defendant that results in the constitutional violation.

*Monell,* 436 U.S. at 690-91.    A municipal policy is deemed to have been made "when a

---

Amendment rights unless they actually violated his rights; but if they actually violated his rights,
then the conspiracy charge adds nothing to the case or to Plaintiff's potential recovery, as a §
1983 plaintiff may recover only once for each injury.  *Thomas v. Cook Cnty. Sheriff's Dep't,* 604
F.3d 293 F.3d 293, 311-13 (7th Cir. 2010).  So even if Plaintiff had pled more than bare bones
allegations in support of his conspiracy claim, the Court would be inclined to dismiss it.

[10]    In *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 692 (1978), the
Supreme Court held that municipalities and other local governmental units are "persons" subject
to liability under 42 U.S.C. § 1983.

'decision-maker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edit." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur*, 475 U.S. at 481). On the other hand, a custom or practice can be found with no official declaration, and can be demonstrated in one of two ways:

> First, custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990); *accord Beck*, 89 F.3d at 971. Secondly, "[c]ustom ... may also be established by evidence of knowledge and acquiescence" by the final policymakers in the area. *Beck*, 89 F.3d at 971 (citing *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989)). However, a plaintiff need not identify knowledge and acquiescence of a practice so "permanent and well settled" as to have "the force of law," *Monell*, 436 U.S. at 691, 98 S.Ct. 2018, since such customs are "ascribable to municipal decisionmakers." *Bielevicz*, 915 F.2d at 850 (internal quotations omitted) (quoting *Anela v. City of Wildwood*, 790 F.2d 1063, 1067 (3d Cir.1986)); *see also id*. at 853 ("Such well-established custom exists only with the approval or, at the very least, with the sufferance of policymakers"). A plaintiff cannot prove a custom simply by citing one instance of the custom asserted. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995); *Fletcher*, 867 F.2d at 793. However, a showing that a well-established practice exists, and that the municipality has done nothing to end or change the practice, supports a finding of a custom attributable to the municipality. *See Bielevicz*, 915 F.2d at 852–53 (finding no basis for a directed verdict in favor of a municipality upon such a showing at trial).

*Izquierdo v. Sills*, 68 F. Supp. 2d 392, 406 (D. Del. 1999). *See also Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could occur and that the decision-maker acted with deliberate indifference to this risk.).

Finally, "[i]n addition to identifying a policy or custom, a plaintiff bears the burden of proving that the municipal practice in question was the proximate cause of the violation of his constitutional rights." *Hodinka v. Delaware Cnty.*, 759 F.Supp.2d 603, 615–16 (E.D.Pa. 2011) (citing *Bielevicz,* 915 F.2d at 850). To do so, the plaintiff must show either an "affirmative link" or "plausible nexus" between the custom or practice and the alleged constitutional deprivation.

*Bielevicz*, 915 F.2d at 850–51. So long as this link is not too tenuous, whether the municipality was the proximate cause of the constitutional violation and thus the injury to the plaintiff, is a matter left to the jury. *Id*. at 851 (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)). *See also Bd. of the Cnty. Comm'rs of Bryan Cnty*., 520 U.S. at 404 ("The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.").

Defendants argue that Plaintiff has failed to establish municipal liability as "[t]here is no municipal policy or practice to physically harm inmates who report illegal drug trafficking in the ACJ. Likewise, there is no municipal policy or practice of permitting inmates to attack whistleblowers, or deny them treatment." Br. at 21. The Court agrees with this argument.

However, inasmuch as the Court has determined that the Complaint contains sufficient allegations to establish a Due Process / First Amendment claim with respect to the Plaintiff's allegations that there is a "policy or practice" of improperly opening inmates' legal mail, the Court finds that at this time, the Complaint establishes a facially plausible claim under *Monell* against ACJ or its employees in their official capacities.

D.     Qualified Immunity

As a final matter, Defendant seeks dismissal of Defendants Rich Fitzgerald, County Executive, Warden Harper, Deputy Warden Zeppo, Deputy Warden Wainwright and Maintenance Supervisor Joe Glaph[11] under the doctrine of qualified immunity. State officials

---

[11]     As the Court has determined that the allegations against Defendant Glaph are insufficient to state a constitutional violation, the Court will not address the applicability of the doctrine of qualified immunity as to this Defendant.

performing discretionary acts enjoy qualified immunity from money damages in section 1983 actions when their conduct does not violate "clearly established" statutory or constitutional rights of which a "reasonable person" would have known at the time the incident occurred. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Saucier v. Katz,* 533 U.S. 194 (2001). Qualified immunity only applies to officials sued in their individual capacities for money damages. It does not protect officials sued in their official capacities. When a government official is sued in his official capacity, the real party in interest is the government entity that employs him. *Hafer v. Melo*, 502 U.S. 21, 25 (1992).

Here, the complaint specifically states that Defendant Fitzgerald is sued only in his official capacity. *See* Complaint, ¶ 6. As the Court has determined that Plaintiff has adequately pled a *Monell* claim with respect to a "policy and procedure" regarding the handling of legal mail, dismissing Defendant Fitzgerald under the ground of qualified immunity is not appropriate.

Likewise, as to Defendants Harper, Zeppo, Wainwright, and John Doe/Jane Doe Mailroom Supervisor, the Court has found that Plaintiff has sufficiently alleged a constitutional violation with regard to the handling of his legal mail. Therefore, at this time, it is not appropriate to dismiss the legal mail tampering claims against these defendants in their individual capacities under the doctrine of qualified immunity.

### Leave to Amend

The Court must allow amendment by the plaintiff in a civil rights case brought under § 1983 before dismissing pursuant to Rule 12(b)(6), irrespective of whether it is requested, unless doing so would be "inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors*, Inc., 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir.

2004). The Court is cognizant of these holdings, but finds that allowing for amendment by Plaintiff would be futile.

Defendants' Motion to Dismiss the Complaint placed Plaintiff on notice of the deficiencies in the Complaint. Further amendment would be futile as Plaintiff has had the opportunity to revise his claims to add any missing factual averments, but has elected not to do so.

## ORDER

For the reasons set forth above, the Motion to Dismiss will be granted in part and denied in part. As detailed above, the only claims remaining in this lawsuit are as follows:

1.      A tampering of legal mail claim against Defendants Fitzgerald, Harper, Zeppo, Wainwright, and John Doe/Jane Doe Mailroom Supervisor;

2.      A failure to protect claim against Defendants Younkins, Jr., and Chisholm;

3.      A failure to provide medical treatment claim against Defendants Younkins, Jr., Chisholm, Slaby, and Nurse Jim; and

4.      A retaliation claim against Defendants Younkins, Jr., Chisholm, Slaby, and Nurse Jim.

All other claims are denied with prejudice.

Defendants shall file an Answer on or before **August 28, 2019,** pursuant to Fed.R.Civ.P. 12(a)(4).

IT SO **ORDERED** this  13th day of August, 2019.


                                        s/ Cynthia Reed Eddy
                                        Cynthia Reed Eddy
                                        Chief United States Magistrate Judge

cc:     RICHARD ALLEN HAMMONDS
        136752
        ALLEGHENY COUNTY JAIL
        950 2ND AVE
        PITTSBURGH, PA 15219
        (via U.S. First Class Mail)

        Lee M. Dellecker
        Allegheny County Law Department
        (via ECF electronic notification)