IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

RICHARD ALLEN HAMMONDS II,      **)**
      **)**     Civil Action No. 2: 18-cv-1389
    Plaintiff,      **)**
      **)**     Chief United States Magistrate Judge
      v.      **)**     Cynthia Reed Eddy
      **)**
ALLEGHENY COUNTY BUREAU OF    **)**
CORRECTIONS, et al.,      **)**
      **)**
    Defendants.

**MEMORANDUM OPINION re: MOTION FOR SUMMARY JUDGMENT
FILED BY DEFENDANTS FITZGERALD, HARPER, ZEPPO, AND WAINWRIGHT[1]**

Pending before the Court is the Motion for Summary Judgment, with brief in support, filed by Defendants County Executive Rich Fitzgerald, Warden Orlando L. Harper, Deputy Warden David Zetwo,[2] and former Deputy Warden Simon Wainwright. (ECF Nos. 168 and 169). Plaintiff filed a Memorandum of Law in opposition (ECF No. 174), to which Defendants filed a Reply. (ECF No. 179). The issues are fully briefed and the factual record thoroughly developed. (ECF Nos. 172, 176, 177). After carefully considering the motion, the material in support and opposition to it, the memoranda of the parties, the relevant case law, and the record as a whole, the motion for summary judgment will be denied.

---

[1]    In accordance with the provisions of 28 U.S.C. § 636(c)(1), all parties who have been properly identified have been served and have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and entry of judgment. *See* ECF Nos. 25 and 36.

[2]    The complaint names "Deputy Warden 'John Doe' Zeppo." Defendant's proper name is David Zetwo. *See* Ds' Mot for Summ. J., n.1 (ECF No. 168). The Court will refer to the defendant by his proper name.

I.      **Background**

Plaintiff, Richard Allen Hammonds II ("Plaintiff" or "Hammonds"), is a former Allegheny County Jail ("ACJ") inmate, and except for one month when he was temporarily transferred to Lucerne County Correctional Facility,[3] he was incarcerated at ACJ at all times relevant to this litigation. He initiated this action under 42 U.S.C. §§ 1983, 1985, and 1986, seeking damages against the Allegheny County Bureau of Corrections, County Executive Rich Fitzgerald, and the following ACJ officials and officers:  Warden Orlando L. Harper, Deputy Warden Zeppo, Deputy Warden Wainwright, Maintenance Supervisor Joe Glaph, Maintenance Supervisor Amelia Bennett, Sergeant Slaby, Corrections Officer Chisholm, Corrections Officer Younkins, Jr., Registered Nurse "Nurse Jim", and John/Joan Doe, mailroom supervisor.[4]  The majority of the defendants are sued in their individual and official capacities, except for Rich Fitzgerald, who is sued only in his official capacity, and Sergeant Slaby, who is sued only in his individual capacity.  Complaint, ¶¶ 6 and 10, respectively. (ECF No. 7).

Hammonds initially asserted a potpourri of claims, complaints, and allegations stemming from a variety of alleged constitutional deprivations.  However, after the Court's ruling on Defendants' motion to dismiss, only these four claims brought pursuant to 42 U.S.C. § 1983 survive:

(i)      A tampering of legal mail claim against Defendants Fitzgerald, Harper, Zetwo, and Wainwright;

(ii)     A failure to protect claim against Defendants Younkins, Jr., and Chisholm;

---

[3]      On March 8, 2018, Hammonds was transferred to Luzerne County Correctional Facility where he remained for approximately one month.  Pl's Resp. to Ds' Concise Stmt of Mat. Facts, at ¶ 1. (ECF No. 176).

[4]      The Doe Defendants were dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) as Plaintiff, through his counsel, informed the Court that he did not currently intend to pursue claims against or substitute these parties. *See* ECF Nos. 185 and 186.

(iii)    A failure to provide medical treatment claim against Defendants Younkins, Jr., Chisholm, Slaby and "Nurse Jim;" and

(iv)    A retaliation claim against Defendants Younkins, Jr., Chisholm, Slaby and Nurse Jim.

*See* Memorandum Opinion and Order entered 10/13/2019 (ECF No. 53). Following the close of discovery, Defendants Fitzgerald, Harper, Zetwo, and Wainwright filed this motion for summary judgment.  Hammonds argues that summary judgment should not be granted because genuine issues of material facts are in dispute.

## II.    Standard of Review

The standard for assessing a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962)). The moving party has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. The party opposing the motion, however, cannot rely merely upon bare assertions, conclusory allegations, or

suspicions to support its claim. The nonmoving party "must do more than simply show that there

is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, and must

produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact.

*See Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

**III.     Discussion**

> **A.     Exhaustion Under the Prison Litigation Reform Act**

Before turning to the merits, the Court must first decide whether Hammonds exhausted

his administrative remedies in accordance with the mandate of the Prison Litigation Reform Act

("PLRA").  Defendants contend that they are entitled to the entry of judgment in their favor as a

matter of law because Hammonds did not comply with all requirements of ACJ's grievance

system and thereby failed to exhaust all administrative remedies available to him.  Hammonds

responds that ACJ failed to timely respond to Hammonds' grievances in accordance with its own

policies, thus making the grievance process unavailable.

Hammonds' claims are governed by ACJ's Inmate Handbook (ECF No. 168-16,[5] Exh.

P).  The Inmate Handbook sets forth the prison's grievance procedure:

> You have the right to file a written Standard Complaint, anytime, within fifteen
> days after a grievable event has occurred.  A written Standard Complaint should
> be written on an Inmate Complaint Form.  These forms can be obtained from Pod
> Officers.  Once the form is completed, it should be forwarded to your Unit
> Manager.  Within forty-eight (48) hours, except weekends and holidays, you will
> be advised in writing that your complaint was received.  Complaints will be
> answered within seven (7) working days of the receipt of the complaint. . . .[6]

---

[5]     For ease of reference, the Court utilizes the page numbers from the CM/ECF header.

[6]     Sergeant Slaby testified during his deposition that the responding officer has ten (10)
days after the grievance has been assigned to answer the grievance.  Slaby Depo., 24: 21-22
(ECF No. 177-2 at 9).  Deputy Warden Zetwo testified durng his deposition that when
Hammonds filed his grievances, the grievances would have been taken to the shift commander's
office and put in an appropriate box to be answered.  The policy has since changed and inmates
file everything electronically. Zetwo Depo., 36: 14-16 (ECF No. 177-3 at 15).

If you are not satisfied with the answer from the Unit Manager, you may appeal to the Warden in writing on the form provided. . . . The Warden will approve, disapprove or alter the findings in writing within nine (9) working days, excluding Saturdays, Sundays and holidays.

If you are not satisfied with the Warden's response, you may appeal by mail to the Allegheny County Prison Board.  A member of that Board will be appointed to address the complaint. . . The Prison Board member will answer the appeal within ten (10) working days, excluding Saturdays, Sundays and holidays.  The Prison Board member will affirm, modify, or reverse any decision previously made.  The decision of the Prison Board member is final and binding.

*Id*. The undisputed summary judgment records shows that Hammonds filed two written grievances pertaining to the improper handling of his legal mail.  On August 29, 2018, he submitted his first grievance complaining that his legal mail was being withheld:

I file this grievance against Sgt. Andrew Culter[7] for retaliating against me for filing and winning a law suit against him in Hammonds v. DOC et al (Court No. 10-444).  **He withholds my legal mail, denies me law library and instructs RHU staff to do the same.**  I am a pro se litigant in a case Commonwealth v. Hammonds.  It's a criminal appeal case.

He's also retaliating against me for filing a grievance against him for denying me due process by placing me on permanent DHU status without a hearing and threatening me with physical harm if I continue to file grievances against him.  I will be filing a law suit against him in the near future.  Thank you.  Have a good day.

s/Richard Hammonds.

(ECF No.168-14 at 3)(emphasis added).

Hammonds filed his second grievance about the handling of his legal mail on September 4, 2018:

---

[7]    Sgt. Andrew Culter is not a named party in this lawsuit.

**Inmate Complaint OR Reason for Appeal** (Print Legibly)

I FILE this GRIEVANCE AGAINST ORLANDO HARPER AND ANDREW CUITZ FOR INTENTIONALLY INTERFERING WITH MY ACCESS TO THE COURTS. by WITHHOLDING MY LEGAL MAIL DENYING ME ACCESS TO THE LAW LIBRARY, REFUSING TO ALLOW ME ACCESS TO ENVELOPES AND DENYING ME ACCESS TO THE PHONE FOR A ATTORNEY CALL. ALL IN RETALIATION FOR ME HAVING SUED ANDREW CUITZ A CASE HAMMONDS V DOE Et.AL 10-444

AND I PERSONALLY SPOKE TO HARPER AND INFORMED him of MY ISSUES WITH CUITER AND HE SAID HE STANDS by HIS STAFF.

(*Id.* at 2).

On October 1, 2018, Sergeant Rich Garber denied the first grievance stating, "There is insufficient evidence to support your claims of retaliation.  After a thorough investigation your claims are unfounded."  (ECF No. 168-15 at 3).  And on October 4, 2018, Sergeant Garber denied the second grievance stating, "You must put in a request to use the law library, phone and to receive envelopes.  Also there is insufficient evidence to support your claims of threats."  (*Id.* at 2).  Defendants argue that rather than appealing these grievances as required by the ACJ Inmate Handbook, Hammonds immediately filed this lawsuit.

The summary judgment record does not reflect the date when either Grievance was received by the Unit Manager, but the undisputed record does reflect that more than a month had elapsed between the time Hammonds submitted his grievances on August 29, 2018, and September 4, 2018, respectively, and when he received a response to his grievances on October 1, 2018 and October 4, 2018, respectively. There is no evidence in the record that an extension to respond was authorized. Further, Sgt. Slaby testified in his deposition that he was not sure how the complaint officer tracked the grievances.  Slaby Depo. 25: 12-20 (ECF No. 177-2 at 10).

Based on the undisputed summary judgment record, the Court finds neither grievance was answered in a timely manner in accordance with ACJ's own policy - "Complaints will be answered within seven (7) working days of the receipt of the complaint." "[A]s soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019). Thus, under these circumstances, Defendants' request for summary judgment based on failure to exhaust administrative remedies will be denied. The Court now turns to the merits of Hammonds' claim.

**B.      Merits**

As stated *supra,* there is a single claim remaining against the moving defendants:   a tampering of legal mail. "Prisoners by virtue of their incarceration, 'do not forfeit their First Amendment right to use of the mails,' and . . . a 'state pattern and practice of opening legal mail outside the presence of the addressee inmate interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) (quoting *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995)).

Defendants argue that they are being sued in their capacities as policy makers and summary judgment should be granted in their favor because ACJ has a policy stating that all legal mail is to be opened only in the presence of the inmate:

> Inmate legal mail is picked up at the Mail Room located on Level 1M.  The legal mail is to be picked up Monday through Friday.  It is the responsibility of the Unite Manager or Assistant Unit Manager to distribute legal mail to the inmates. **Per Federal Law and A.C.A. standards, Unit Managers or Assistant Unit Managers are to assure that legal mail is opened only to inspect for**

> **contraband and only in the presence of the inmate**.  All legal mail given to inmates shall be documented and signed for by the inmate.

ACJ Inmate Mail Privilege/Publication, Policy #430 (Exh. B., 168-2 at 3) (ECF No. 168-2, at 4) (emphasis added). Defendants also argue that Hammonds' claims, at best, are based on speculation as he is unable to identify the person or persons who allegedly opened and read his mail.

Hammonds responds that despite this written policy, ACJ had a unwritten policy, practice, or custom whereby his legal mail was opened outside his presence. And that, as a result of his legal mail being improperly opened and read, he was assaulted numerous times by fellow prisoners.  *See* Hammonds Depo., 32: 4-14 (ECF No. 168-1 at 23) ("Because COs telling the prisoners that I'm a snitch, that I'm snitching on this, snitching on that, which results in me being assaulted by numerous inmates.").

During his deposition, Hammonds testified that he notified Defendants Harper, Zetwo, and Fitzgerald about the policy violation and wrote the ACJ mailroom supervisor asking why his legal mail was being opened outside his presence.  He testified that,

> * he spoke to Warden Harper, Deputy Warden Zetwo, and the COs about his legal mail being opened, and Warden Harper responded, "that's his job, to make sure that K2 doesn't come into the jail." Hammonds Depo. 23: 15-18 (ECF No. 168-1 at 14);
>
> * he wrote to Defendant Fitzgerald that the ACJ legal mail policy was being violated, and received no response.  *Id*. at 24:15-19. Except that, according to Hammonds, Defendant Fitzgerald sent a detective to ACJ to tell Hammonds to stop writing to Fitzgerald.  *Id.* at 25: 8-12; and
>
> *  he wrote to the mailroom supervisor complaining that his legal mail was being opened and received the response "that's his job." *Id*., 22: 10-11.  According to Hammonds, after he had an argument with the mailroom supervisor about the mail, he stopped receiving mail. *Id*. at 22:14.

8

Hammonds also testified that his attorney stopped sending him mail – "he just would talk to me. We would verbally talk about our case." *Id*. at 29: 14-16.

Defendants' position is that no legal mail was opened outside any inmate's presence. But Sgt. Slaby offered somewhat contradictory deposition testimony on this issue:

Q:  How does the Jail ensure that inmates' legal mail isn't being opened outside of inmates' presences?

A:  It goes by just how I explained to you already with the legal mail.  The legal mail is secured in the mailroom, it's picked up by supervisory staff, who then have to hand take it up to the pods, and that's where it's issued out.

Q:  So is there someone in the pod making sure that those letters are still intact when they get there?

A:  Yes, the officers, because **everything has to be handed to the inmate and opened up in their presence.**

Q:  So just to clarify, it's the correction officers on the pod that are checking the envelopes?

A:  Yes, as well as the sergeants.

Q:  Is there anything stopping the COs or the sergeants from opening legal mail before it gets to an inmate?

A:  Our policies.

Q:  Is it against the policy to open legal mail outside the presence of an inmate?

A:  **You should never open up legal mail outside the presence of an inmate.**

Q:  It is still per your policy that legal mail needs to remain unopened before it reaches an inmate?

A:  That's what I've always followed, always.  What it does, it prevents issues from coming up.  Because that way you can be accused of doing certain things, and that's what we want to avoid.

Q:  Does that same rule apply to any type of mail for inmates?

A:  The mail they get now is normally copied anyway, so there is no real hard letters that come from a sending entity, it goes directly to an inmate.  **The mail**

9

**for the time was actually being copied.  The inmates were being given copies of the legal mail,** and now they're having the ability to have it downloaded on the tablets.

Q:  So if an inmate receives a piece of legal mail that's already been opened, that is also a violation of the policy, is that correct?

A:  I've never heard of opening up legal mail without – you know, not in the presence of an inmate.

Depo. Deputy Warden Zetwo, 23: 3-25; 24: 1-24 (ECF No. 177-3 at 8-9) (emphasis added).

Viewing the facts and the inferences to be drawn therefrom in the light most favorable to Hammonds, the non-moving party, the Court finds that the summary judgment record contains genuine issues of material fact about whether Hammonds' legal mail was opened outside his presence and supports the inference that one or more of the Defendants knew of and chose to disregard Hammonds' complaints that his legal mail was being improperly opened. It will be for the factfinder to determine whether an unwritten practice, policy, or custom existed which permitted Hammonds' legal mail to be opened outside his presence.[8]   And if a reasonable jury could conclude that such an unwritten practice, policy, or custom existed, it follows that a reasonable jury could determine that such an unwritten policy, practice, or custom was unconstitutional. *Turner v. Safley*, 482 U.S. 74, 89 (1987).

**C.      Municipality Liability Claim**

Local governments can be held liable under section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible for under § 1983." *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658,

---

[8]      Further explication of what each specific Defendant knew and was able to do to is best resolved by thorough factual examination.

694 (1978).[9] "[A] plaintiff advancing a municipal liability claim must establish (a) 'a violation of a federal right'—which may not necessarily arise from the liability of an individual employee— and (b) a municipal policy or custom that caused the violation." *Butler v. Lamont*, 672 F. App'x 139, 142 (3d Cir. 2016) (quoting *Berg v. Cty. of Allegheny*, 219 F.3d 261, 268–77 (3d Cir. 2000)). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (alteration in original) (citation and internal quotation marks omitted). Whereas custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citation and internal quotation marks omitted).

As to the first prong of *Monell* liability, i.e., a violation of an underlying constitutional or statutory right, for the reasons stated above, a reasonable jury could find that Defendants violated Hammonds' constitutional rights by improperly opening his legal mail outside his presence. As to the second prong, whether municipal policies and/or practices caused these violations, Hammonds has produced evidence (his grievances complaining of mail tampering) and has testified that he personally informed Defendants that his legal mail was being improperly opened. As a result, the Court will deny summary judgment on this claim.

**D.      Qualified Immunity**

As a final matter, Defendants also argue that they are entitled to summary judgment based on a defense of qualified immunity. The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate

---

[9]        In *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 692 (1978), the Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983.

clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223 (2009).

Based on the facts presented here and the analysis set forth above, a jury could find that Hammonds' constitutional rights were violated when his legal mail was opened outside his presence.  Assuming that Hammonds' constitutional rights were violated, a jury could also find that Defendants could not reasonably have believed that their conduct was lawful.  As a result, summary judgment based upon a defense of qualified immunity will be denied.

### III.    Conclusion

For all these reasons, the Motion for Summary Judgment filed by Defendants County Executive Rich Fitzgerald, Warden Orlando L. Harper, Deputy Warden David Zetwo, and former Deputy Warden Simon Wainwright, will be denied.

An appropriate Order follows.


Dated:  March 28, 2022                                              s/ Cynthia Reed Eddy
                                                                            Cynthia Reed Eddy
                                                                            Chief United States Magistrate Judge


cc:      All Counsel of Record
          (via ECF electronic notification)

12