**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH**

RICHARD ALLEN HAMMONDS II,     **)**

                                        **)**        Civil Action No. 2: 18-cv-1389

    Plaintiff,                **)**

                                        **)**        Chief United States Magistrate Judge

           v.                    **)**        Cynthia Reed Eddy

                                        **)**

ALLEGHENY COUNTY BUREAU OF     **)**

CORRECTIONS, et al.,             **)**

                                        **)**

    Defendants.

**MEMORANDUM OPINION re: MOTION FOR SUMMARY JUDGMENT
FILED BY DEFENDANTS SLABY, CHISHOLM, AND YOUNKINS, JR.[1]**

Pending before the Court is the Motion for Summary Judgment, with brief in support, filed by Defendants Slaby, Chisholm. and Younkins, Jr. (ECF Nos. 170 and 171).  Plaintiff filed a Memorandum of Law in opposition (ECF No. 175), to which Defendants filed a Reply. (ECF No. 178).  The issues are fully briefed and the factual record thoroughly developed.  (ECF Nos. 172, 176, 177).  After carefully considering the motion, the material in support and opposition to it, the memoranda of the parties, the relevant case law, and the record as a whole, the motion for summary judgment will be denied in part and granted in part.

I.     **Background**

Plaintiff, Richard Allen Hammonds II ("Plaintiff" or "Hammonds"), is a former Allegheny County Jail ("ACJ") inmate, and except for one month when he was temporarily transferred to Lucerne County Correctional Facility,[2] he was incarcerated at ACJ at all times

---

[1]     In accordance with the provisions of 28 U.S.C. § 636(c)(1), all parties who have been properly identified have been served and have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and entry of judgment.  See ECF Nos. 25 and 36.

[2]     On March 8, 2018, Hammonds was transferred to Luzerne County Correctional Facility

relevant to this litigation. He initiated this action under 42 U.S.C. §§ 1983, 1985, and 1986, seeking damages against the Allegheny County Bureau of Corrections, County Executive Rich Fitzgerald, and the following ACJ officials and officers: Warden Orlando L. Harper, Deputy Warden Zeppo, Deputy Warden Wainwright, Maintenance Supervisor Joe Glaph, Maintenance Supervisor Amelia Bennett, Sergeant Slaby, Corrections Officer Chisholm, Corrections Officer Younkins, Jr., Registered Nurse "Nurse Jim, and John/Joan Doe, mailroom supervisor.[3] Most of the defendants are sued in their individual and official capacities, except for Rich Fitzgerald, who is sued only in his official capacity, and Sergeant Slaby, who is sued only in his individual capacity. Complaint, ¶¶ 6 and 10, respectively. (ECF No. 7).

Hammonds initially asserted a potpourri of claims, complaints, and allegations stemming from a variety of alleged constitutional deprivations. But after the Court's ruling on Defendants' motion to dismiss, only these four claims brought pursuant to 42 U.S.C. § 1983 survive:

(i)      A tampering of legal mail claim against Defendants Fitzgerald, Harper, Zetwo, and Wainwright;

(ii)      A failure to protect claim against Defendants Younkins, Jr., and Chisholm;

(iii)      A failure to provide medical treatment claim against Defendants Younkins, Jr., Chisholm, Slaby, and "Nurse Jim;" and

(iv)      A retaliation claim against Defendants Younkins, Jr., Chisholm, Slaby, and Nurse Jim.

*See* Memorandum Opinion and Order entered 10/13/2019 (ECF No. 53). The dispute involving Defendants Slaby, Chisholm, and Younkins, Jr., centers upon a prisoner-on-prisoner assault.

---

where he remained for about a month. Pl's Resp. to Ds' Concise Stmt of Mat. Facts ¶ 1. (ECF No. 176).

[3]      The Doe Defendants were dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) as Plaintiff, through counsel, informed the Court that he did not currently intend to pursue claims against or substitute these parties. *See* ECF Nos. 185 and 186.

The parties' respective counsel largely agree on the facts underlying the matter, but disagree on the proper interpretation of those facts.  The undisputed summary judgment reflects that on February 11, 2018, Hammonds was attacked from behind by an inmate, taken to the ground, and then dragged into a restricted corner of ACJ Pod 3F, outside of cell 119.  While in the corner, he was assaulted for approximately ten minutes by at least seven inmates.  Younkins, Jr., Depo.: 306:24 – 307:2 (ECF No. 177-6 at 76-77)[4].  According to Hammonds, he was stabbed in the head, chest and back, and was beaten with batteries in a sock.  He had his two front teeth knocked out and his eye blackened.  Hammonds Depo.: 45-13-25 (ECF No. 177-1 at 10). After the close of discovery, Defendants Slaby, Chisholm, and Younkins, Jr., filed this motion for summary judgment.  Hammonds argues that summary judgment should not be granted because genuine issues of material facts are in dispute.

## II.     Standard of Review

The standard for assessing a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled.   A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 250.

---

[4]        For ease of reference, the Court uses the page numbers from the CM/ECF header.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962)). The moving party has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. The party opposing the motion, however, cannot rely merely upon bare assertions, conclusory allegations, or suspicions to support its claim. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, and must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact. *See Big Apple BMW, Inc. v. BMW of North America, Inc*., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.   Discussion

### A.   Exhaustion Under the Prison Litigation Reform Act

Before turning to the merits, the Court must first decide whether Hammonds exhausted his administrative remedies in accordance with the mandate of the Prison Litigation Reform Act. Defendants contend that they are entitled to the entry of judgment in their favor as a matter of law because ACJ has no record of a formal grievance submitted by Hammonds pertaining to the assault on February 11, 2018. Hammonds responds that another inmate, David Francis, filed a grievance and request for medical request on Hammonds' behalf, on February 12, 2018, as he could not fill out the forms himself because of his injuries. Defendants appear to concede a grievance may have been submitted and also acknowledge that the grievance has been lost as it is not in Hammonds' file.

Defendants' reliance on the lack of any record showing that Hammonds filed no grievance is unfounded, especially when the undisputed summary judgment reflects that it was

the grievance that spurred the investigation into the assault.  Under these circumstances, the Court cannot find that Hammonds failed to exhaust his administrative remedies.  The Court will now turn to the merits of Hammonds' claims.

### B.    Merits

As stated above, three claims remain against the moving defendants:

(i)      A failure to protect claim against Defendants Younkins, Jr., and Chisholm;

(ii)     A failure to provide medical treatment claim against Defendants Younkins, Jr., Chisholm,  and Slaby; and

(iii)    A retaliation claim against Defendants Younkins, Jr., Chisholm, and Slaby.

Hammonds testified during his deposition that he was a pretrial detainee at all relevant times.  Hammonds Depo.: 7: 11-12 (ECF No. 168-1 at 7). As a result, his failure to protect and failure to provide medical treatment claims will be analyzed under the Due Process Clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment.  *Fuentes v. Wagner*, 20 F.3d  335,  344 (3d  Cir.  2000).   With  that said,   however, when  analyzing conditions of confinement claims for pretrial detainees, courts utilize the jurisprudence developed under the Eighth Amendment.  *Hubbard v. Taylor*, 339 F.3d 150, 165-66 (3d Cir. 2005).  The requirements of the Eighth Amendment set a "floor" for analysis of Fourteenth Amendment due process claims. Hammonds' claims will be addressed in turn.

### Failure to Protect

In the most general sense, a prison official violates the Eighth Amendment when two elements are established: (1) the inmate alleges an objectively serious deprivation by a prison official of food, clothing, shelter, medical care, or safety; and (2) the prison official acted with a sufficiently culpable state of mind to deprive the inmate of his right to food, clothing, shelter,

medical care, or safety.  Of particular relevance to this case, the Supreme Court of the United States has addressed these two general elements as they apply to the failure to protect from assault by other inmates.  *Framer v. Brennan*, 511 U.S. 825, 832 (1994).  To survive summary judgment, a plaintiff is required "to produce sufficient evidence of (1) a substantial risk of serious harm; (2) [defendant's] deliberate indifference to that risk; and (3) causation." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir.1997).

Hammonds testified during his deposition that immediately prior to the assault, he was playing cards with a few prisoners, and as Defendant Younkins, Jr., was leaving the pod to go on break, he called Hammonds a "rat" in front of other inmates and encouraged other inmates to assault Hammonds.  Hammonds Depo: 44:15-17 (ECF No. 177-1 at 9) ("Younkins just yelled out of nowhere, anybody who fucks up Hammonds will be given a package 'cause he's a rat'.").  He testified that after hearing Defendant Younkins, Jr., call him a "rat," he immediately stood up and asked to be taken to protective custody.  His request was denied by Defendant Chisholm, who said, "snitches get stiches and thrown in ditches." *Id*. at 44: 22-24.

Defendants Younkins, Jr., and Chisholm deny Hammonds' account of events.  Defendants argue that no evidence, other than Hammonds' own testimony, supports Hammonds' allegations that Defendants Younkins, Jr., and Chisholm instigated the assault against him or witnessed or could have otherwise meaningfully intervened to stop the February 11, 2018, assault.  Younkins, Jr., testified that he was not physically present on the pod at the time of the assault as he had gone on break and Defendant Chisholm testified that at the time of the assault, he was performing a security round on the second level of the pod and was unaware that the assault was occurring on the ground level.

These contrasting facts indicate that summary judgment should not be granted. Construing the evidence in the light most favorable to Hammonds a reasonable jury crediting his account of the facts could conclude that Defendants either instigated the assault against him or witnessed or could have otherwise meaningfully intervened to stop the assault. Thus, the Court will deny Defendants summary judgment with respect to Hammonds' failure to protect claim.

### Failure to Provide Medical Treatment

The United States Court of Appeals for the Third Circuit has stated that a pretrial detainee's right to adequate medical care should be analyzed under the well-settled standard established in *Estelle*, which provides that prison officials are required "to provide basic medical care to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). Prison officials violate the Eighth Amendment when they act deliberately indifferent to a prisoner's serious medical needs by "intentionally denying or delaying access to medical care or interfering with the treatment once prescribe." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (citing *Estelle*, 429 U.S. at 97). A medical need is "serious" if "it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation omitted). "The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment." *Id*. Deliberate indifference can be established when "necessary medical treatment is delayed for non-medical reasons," *Natale v. Camden Cty Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2002), or "[w]here prison authorities deny reasonable requests for medical treatment." *Monmouth Cty. Corr. Institutional Inmates,* 834 F.2d at 346. *See also Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir.

2009) ("Deliberate indifference may be shown by intentionally denying or delaying medical care.").

In this case, the parties agree that Hammonds sustained serious injuries as a result of the assault on February 11, 2018. Defendant Younkins testified that in his personal opinion getting two front teeth knocked out is a serious injury; Younkins, Jt. Depo. 201: 21-23 (ECF No. 17-6 at 31), and Defendant Chisholm agreed that the assault on Hammonds was violent and that Hammonds sustained serious injuries as a result of the assault. Chisholm Depo. 155:23-156:1 (ECF No. 177-7 at 32-33). The parties disagree, however, on whether Hammonds has presented sufficient evidence from which a reasonable jury could find that Defendants were deliberately indifferent to his serious medical needs.

According to Hammonds, he did not receive any medical treatment for five days, despite his daily requests and obvious needs for it. Hammonds testified during his deposition that he was screaming, pleading for help and medical assistance and that everyone on the pod was aware of his need for medical treatment. Further, according to Hammonds, every corrections officer who worked on the pod between February 11 and February 16 was informed of Hammonds' medical situation and that he wanted help, observed his missing teeth and facial lacerations, and yet never provided medical care. Hammonds testified that Defendant Younkins, Jr., checked on his "safety and well-being" during his guard tours multiple times each day, yet did not take him for medical care. He testified that Defendant Chisholm told him to go back into his cell immediately after the assault and did not call medical, despite Hammonds' request to go to protective custody and the need for medical care treatment. And according to Hammonds, Defendant Slaby, upon discovering that Hammonds had been assaulted, waited more than two

hours before taking him to receive medical care, and that was for the sole purpose of having him transferred to maximum security 6E Pod.

The version of events offered by Defendants differs dramatically from the version offered by Hammonds, the non-movant:   they contend there is no evidence demonstrating that Defendants were made aware of Plaintiff's injuries before February 16, 2018, the date he received treatment.  Clearly, genuine disputes of material fact exist as to Hammonds' failure to provide medical treatment claim and summary judgment will be denied.

### Retaliation

To state a prima facie case of retaliation, a prisoner / plaintiff  must demonstrate  (1) that the conduct in which he engaged was constitutionally protected, (2) he suffered an "adverse action" at the hands of prison officials; and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him.  *Thomas v. Independence Twp*., 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  It is well established filing prison grievances is a constitutionally protected activity.  *See Pepe v. Lamas*, 679 F. App'x 173, 175 (3d Cir. 2017) (*citing Mitchell,* 318 F.3d at 530 (explaining that the filing of a prison grievance "implicates conducted protected by the First Amendment)). And that "[r]etaliating against a prisoner for the exercise of his constitutional rights is unconstitutional."  *Bistrian v. Levi,* 66 F.3d 352, 376 (3d Cir. 2012) (citations omitted), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020).

The summary judgment reflects that on January 7, 2018, Hammonds filed a grievance against "Warden Harper and Company to include every guard working on Pod 3F" complaining

of "second hand smoke" [5]  and stating that "everytime I complain about it I get told to quit being a snitch by the C/Os . . . ."  (Grievance, ECF 168-4) (ECF No. 168-4 at 2).  According to Hammonds, approximately one month later, on February 11, 2018,  Defendant Younkins, Jr., called Hammonds a "rat" in front of other inmates after which Hammonds was violently assaulted by seven inmates.  When asked during his deposition why Defendant Younkins, Jr., would accuse him of being a "rat," Hammonds replied, "Because I filed grievances in jail." Hammonds Depo. 49:11-13 (ECF 177-1 at 12).   Defendants deny that there is any causal connection between Hammonds' filing grievances and the events which occurred on February 11, 2018.

The summary judgment record raises genuine disputes of material fact on this issue.  The Court, however, may not weigh evidence, determine credibility, or resolve factual disputes at the summary judgment stage.  *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.") Defendants thus are not entitled to an entry of summary judgment on Hammonds' First Amendment retaliation claim.

### Municipal Liability Claim

Along with claims against Chisholm and Younkins, Jr., in their individual capacities, Hammonds also brings claims against Chisholm and Younkins, Jr., in their official capacities on

---

[5]    Hammonds testified during his deposition that "it was crystal meth that was smoked at that time,"  Hammonds Depo.: 39:10-11 (ECF No. 168-1 at 30).  *See also* Grand Jury Presentment, 12/5/2019 ("Detectives determined that K2 was being smuggled into the Jail via the mail, Jail employees, and attorneys . . . .) (ECF No. 177-4); and Post-Gazette article dated 1/10/2018, "Sources:  More Allegheny County Jail guards sicked by synthetic marijuana." (ECF No. 177-5 at 2).

the theory that ACJ failed to adequately investigate or discipline Defendants for their failure to

protect Hammonds from an assault or provide medical care in the aftermath.[6]   In support,

Hammonds contends that even after viewing the video of the February 11, 2018 assault,

Defendant Slaby "did not bother to interview, let alone thoroughly investigate or recommend

discipline for Defendant Chisholm's failure to intervene."  P's Resp. to Concise Stmt of Facts, ¶

99 (ECF No. 176).  Essentially, Hammonds is arguing that the County is constitutionally liable

because ACJ ran an ineffective disciplinary system, which was designed not to uncover facts of

officer-involved incidents like the one alleged in this case.  Defendants respond that there is no

evidence of a policy that was "the 'moving force' behind the injury alleged."  Ds' Br. at 20 (ECF

No. 171) (quoting *Berg v. County of Allegheny*, 219 F.3d at 274).

> Our court of appeals has explained that,
>
> [A] § 1983 claim against a municipality may proceed in two ways.  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798-99 (3d Cir. 2019).  A plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, *id*. at 98 (citing *Monell v. Dep't of Social Servs*., 436 U.S.658, 694 (1978)), or that they were caused by a failure or inadequacy by the municipality that "reflects a deliberate or conscious choice," *see id*.  (internal quotation marks omitted) (quoting *Brown v. Muhlenberg Twp*., 269 F.3d 205, 215 (3d Cir. 2001)).  The latter arose in the failure-to-train context, but applies to other failures and inadequacies by municipalities, including those related to supervision and discipline of its police officers.  *Id*. at 798-99 ("[Plaintiff] has not pled a municipal policy . . . [but] has . . . adequately pled that the City failed to train, supervise, and discipline its officers.").

*Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). These two avenues are distinct and require

different evidentiary showings.   When the plaintiff bases his *Monell* allegations on an alleged

failure to discipline, deliberate indifference can be shown where the need for more discipline to

---

[6]     Defendant Slaby has been named in his individual capacity only.  *See* Complaint, at ¶ 10 (ECF No. 7).

prevent violations of constitutional violations was obvious. *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

After reviewing the parties' briefs, and the relevant case law, the Court concludes that Hammonds has not established essential elements to maintain his official-capacity claims against Chisholm and Younkins, Jr.   Beyond pointing to the lack of discipline following the investigation into Hammonds' assault on February 11, 2018, Hammonds' allegations that ACJ "created an environment in which officers did not expect to be held accountable for their actions," have no evidentiary support.   The allegations here standing alone do not provide sufficient proof of a policy or custom to satisfy the dictates of § 1983. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985).   "[One] case standing alone does not provide sufficient proof of a policy or custom to satisfy the dictates of § 1983." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995); *see Blakey v. City of Pittsburgh Police*, No. 08-1332, 2010 WL 1254371, at *5 (W.D. Pa. Mar. 3, 2010) (stating that a failure to investigate may provide a means of establishing municipal liability, however, the "law requires multiple prior instances of a failure to investigate before a municipality is deemed to have developed a policy or custom"). As the record does not support a reasonable jury finding that ACJ had a municipal policy or custom in place which rises to the level of deliberate indifference required for § 1983 liability, the Defendants Chisholm, and Younkins, Jr., are entitled to summary judgment on the official capacity claims brought against them.

## III.    Conclusion

For all these reasons, the Motion for Summary Judgment filed by Defendants Slaby,

Chisholm. and Younkins, Jr., will be denied in part and granted in part.

An appropriate Order follows.


Dated:  March 28, 2022                                      s/ Cynthia Reed Eddy
                                                            Cynthia Reed Eddy
                                                            Chief United States Magistrate Judge


cc:     All Counsel of Record
        (via ECF electronic notification)